UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
    *Plaintiff,*                       )
                                    )
    v.                              ) Docket No. 3:25-CR-30007
                                    )
JUDITH PEPE,                        )
    *Defendant.*                       )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF BODY-WORN-CAMERA POLICIES**

    The Defendant's motion should be allowed because the requested policies are material and exculpatory.

## FACTS

    According to the written reports of various agents of the Federal Bureau of Investigation ("FBI"), the Defendant spat on a federal agent who executed a search warrant at her home. *See* Exhibit 1 (Report of Curtis Robert Sullivan.)

    Each agent executing the warrant was wearing a body worn camera ("BWC"), and the footage was provided to defense counsel

1

pursuant to Fed. R. Crim. P. 16(a)(1)(B) and Local Rule 116.1(c)(1)(A). (Affidavit of Counsel ¶ 2.)

The body worn camera footage includes contentious interactions during which the Defendant refers to the agents as fascists, denigrates their conduct and motives, and suggests that they intend to steal items from her home. (*Id.* ¶ 3.) However, the footage from the agents' BWCs does not include footage of spitting or other assaultive behavior by the Defendant. (*Id.* ¶ 4)

On the existing BWC footage, the Defendant is not bruised or injured and is not engaging in assaultive conduct. (*Id.* ¶ 5.)Then the agents turned off their cameras. When the interaction was over, the Defendant had visible injuries, and the agents were claiming she spat on them. (*Id.* ¶ 6.)

On May 31, 2022, the President of the United States issued EO14074. *See* 87 FR 32945. The order requires, in relevant part, that the heads of certain DOJ law enforcement agencies must "develop policies regarding the use of BWC recording equipment" and "ensure that all BWC policies shall be publicly posted and shall be designed to promote transparency and protect the privacy and civil rights of members of the public." EO 14074, § 13(a)(1).

On or about July 16, 2022, the FBI published Body-Worn Cameras Policy Notice 1216N (July 16, 2022) ("PN 1216"). (*See* Affidavit of Counsel ¶ 7 and Exhibit 2.)

PN 1216 instructs all special agents participating in pre-planned search warrant executions to "wear and activate their BWCs[.]" PN 1216 further emphasizes that agents should "activate their BWCs during FBI pre-planned arrests or searches if unanticipated circumstances arise that warrant the use of BWCs (*e.g.*, contentious or violent interactions with members of the public that could lead to the use of force)." (Exhibit 2, PN 1216 at 6.1.5.)

When PN 1216 issued, a more complete Body Worn Cameras Policy Guide was forthcoming, which was intended to supersede PN 1216 with "comprehensive processes and procedures for the FBI's use of BWCs." *Id.* However, no additional FBI policies are available online. (Affidavit of Counsel ¶ 8.)

The Defendant requested the currently applicable BWC policies and procedures from AUSA Thomas Barnico, in writing on or about June 17, 2025. (Affidavit of Counsel ¶ 9; *see also* Exhibit 3.)

On or about August 13, 2025, AUSA Barnico notified the Defendant that the Department of Justice was refusing to produce the

3

materials if counsel did not sign a non-disclosure agreement. (Affidavit of Counsel ¶ 10; *see also* Exhibit 4.) Counsel declined to sign. This motion followed.

## ARGUMENT

The requested information is exculpatory and material because it will reveal that the FBI agents on the scene intentionally turned off their BWCs in violation of applicable policies so as to avoid recording their interactions with the Defendant.

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is material to preparing the defense." Fed R Crim P 16(a)(1)(E)(i).

It is undisputed that exculpatory evidence, including impeachment evidence, is "material" for this purpose. Brady v. Maryland, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). On retrospective (post-conviction) review, whether an item is "material to preparing the defense" may depend on whether it would have "enabled the defendant significantly to alter the quantum of

4

proof in his favor[,]" *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975), quoted in *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017). The First Circuit has held that "significant alteration" for this purpose "may take place in a myriad of ways, such as uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Goris*, 876 F.3d at 45, quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (quotation marks omitted). In *Lloyd*, the D.C. Circuit held that, as described above, "[t]his materiality standard normally is not a heavy burden[.]" *Lloyd*, 992 F.2d at 351.

The Second Circuit has defined materiality succinctly as evidence that "could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993); cited and discussed in *United States v. Bulger*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013).

If, as it appears, the agents in this case violated policy by turning off their cameras, the existence of the policy is both material and exculpatory. Turning off BWCs in violation of policy tends to indicate professional incompetency by the agents who disregarded clearly applicable rules. The professional incompetency of the agents

5

who interacted with the Defendant is material on its face. If the agents were unable to follow their training in this simple respect, testimony or argument to the effect that they followed training in other respects is undermined.

To the extent that the failure to follow the BWC policy predictably interfered with the collection of audio-visual recorded evidence, the failure specifically undermines the credibility of any testifying agents.

A decision to *deactivate* a BWC, without more and even regardless of applicable policies, may cast some doubt on the credibility of a law-enforcement witness. *See Knopek v. City of Warren*, No. 23-13028, 2025 U.S. Dist. LEXIS 99139, at *25 (E.D. Mich. Mar. 19, 2025). But even failing to turn on a BWC –a less clearly nefarious act than affirmatively deactivating one - may be sufficient to support an adverse credibility finding if the failure violates an applicable policy. *See Goodwin v. City of Painesville*, 781 F.3d 314, 322-23 (6th Cir. 2015) (finding that a failure to activate a recording device against police department policy could weigh against

an officer's credibility).[1] Whether the failure violated a written, applicable policy is important to the interpretation. An officer may exercise discretion to turn off a BWC for many reasons if the action is not prohibited, and not every reason detracts from his credibility. *See e.g. United States v. Wright*, No. 2:21-cr-00024-APG-DJA, 2023 U.S. Dist. LEXIS 167407, at *9-10 (D. Nev. Aug. 15, 2023) (declining to make an adverse credibility finding on ground absent proof that a policy requiring searches to be recorded was in effect when officers turned off their BWCs).[2] Turning off a BWC is suspicious, but turning off a BWC in explicit violation of a policy is very, very suspicious.

Relatedly, this court has previously held that the possibility that a requested item might contain evidence of the complaining witness's attempt to alter or delete data makes the item "material." *See United States v. Akula*, No. 3:19-cr-30039-MGM, 2020 U.S. Dist. LEXIS 63891, at *7-9 (D. Mass. Apr. 13, 2020) (citing *Pettiway v. Vose*, 100 F.3d 198, 201 (1st Cir. 1996)). *Akula* stands for the proposition that a

---

[1] But see *Bannon v. Godin*, 99 F.4th 63, 100 (1st Cir. 2024) (granting summary judgment and holding *in dicta* that the First Circuit has not held that the mere failure to activate a BWC necessarily weighs against credibility).

[2] Deactivation is distinct from mere failure to activite.

7

complainant's attempt to destroy evidence is material because it undermines the complainant's credibility.

The reasoning of the *Akula* and *Pettiway v. Vost* decisions applies here as well. Turning off BWCs in violation of FBI policy is similar to destroying evidence. It is intentional conduct undertaken specifically and solely to interfere with the lawful collection of evidence. Thus, it is likewise material to the jury's credibility determination.

In short, the substance of any policy regarding BWCs is material to the credibility determination, and it is exculpatory if the agents violated that policy.

The materials the Defendant seeks here – BWC policies applicable in 2024 - are extremely likely to be exculpatory because they are likely to contain a recording directive. This is not a fishing expedition for policies that may be exculpatory but may not be. The 2022 policy contained an explicit recording directive intended to cover contentious interactions. (*See* Exhibit 2, PN 1216 6.1.5.) The evidence sought in this case therefore probably contains a recording directive as well. And it is beyond dispute that the interactions with the Defendant were contentious. Thus, it is likely that the policy

8

applicable in 2024 equally required recording of the agents' interactions with the Defendant.

## CONCLUSION

For the reasons stated in the Defendant's motion, as argued here, and in the attached materials, the Defendant's Motion to Compel should be allowed.

>
> Respectfully Submitted,
> JUDITH PEPE,
> By Counsel,
> */s/ Dana Goldblatt*
> Massachusetts BBO# 601022
> The Law Office of Dana Goldblatt
> 150 Main Street, Ste 28
> Northampton, MA 01060
> 413-570-4136
> dana@danagoldblattlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                            )
UNITED STATES OF AMERICA,  )
     *Plaintiff,*                       )
                                            )
      v.                       ) Docket No. 3:25-CR-30007
                                            )
JUDITH PEPE,                    )
     *Defendant.*                )
_____)

## CERTIFICATIONS

Certificate of Consultation

I hereby certify pursuant to Local Rule 116.3(f) that I conferenced the Defendant's Motion to Compel with counsel for the Government on or about August 14, 2025.

                                                        /s/ Dana Goldblatt

Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) on September 1, 2025.

                                                        /s/ Dana Goldblatt