UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES G. PEPE, III,<br><br>    Defendant | CRIMINAL No. 3:25-cr-30007-MGM |

## **GOVERNMENT'S OMNIBUS MOTIONS *IN LIMINE***

The United States of America, represented by U.S. Attorney Leah B. Foley and the undersigned Assistant U.S. Attorneys ("the Government"), hereby files its Omnibus Motions in Limine.[1] This omnibus filing includes the following:

**I.      Motion *in Limine* to Admit Evidence regarding the Defendant's Statements and Actions Post-Arrest**;

**II.     Motion *in Limine* to Admit Evidence regarding the Defendant's Roommate's Arrest and Charges and the Federal Search Warrant for her Home**; and

**III.    Motion *in Limine* to Preclude Defense Counsel from Jury Nullification Argument.**

For all of the reasons stated herein, the Government respectfully requests that the Court allow the Government's motions *in limine.*

## **FACTUAL BACKGROUND**

On February 4, 2025, FBI agents and other law enforcement agents executed a federal search warrant at the residence of Ryan "Riley" English in South Deerfield, Massachusetts. ECF

---

[1] The Government requests the opportunity to file additional motions *in limine* as it continues to prepare for trial.

1

No. 1, Affidavit in Support of Complaint, ¶ 3 (herein, "Compl. Aff."). At the time, English was in federal custody after English was arrested for attempting to assassinate political appointees on the grounds of the United States Capitol in Washington, D.C. English's roommate – the Defendant – was at the South Deerfield residence when the search warrant was executed. *Id.* at ¶¶ 3-8. While the agents were in transit to the South Deerfield residence, they activated their body-worn cameras. Upon arrival at the residence, FBI Agents knocked on the Defendant's door and announced their presence and purpose – FBI agents executing a federal search warrant. *Id.* at ¶ 5. After the Defendant opened the door, FBI Agents allowed the Defendant to gather warm clothing and some belongings from the residence and brought the Defendant into a shared indoor stairwell. *Id*. at ¶ 6. Given the nature of the charges against English (including violations of 40 U.S.C., Section 5104 – Carrying a Firearm, Dangerous Weapon, Explosive, or Incendiary Device on the Grounds of the Capitol), a security sweep of the residence was necessary. *Id.* at ¶¶ 3, 6.

After FBI agents inspected the residence for threats to their safety – including other people, weapons, explosives, and/or incendiary devices – they deemed the residence secure. *Id.* at ¶ 6. The FBI officer in command of the scene (herein, "On Scene Commander" or "OSC") then directed all agents to deactivate their body-worn cameras. FBI agents then brought the Defendant back into the residence and asked the Defendant to sit in a chair in the kitchen and the Defendant complied. *Id.* at ¶ 6. The Defendant was not handcuffed at this time. *Id.*

Shortly thereafter, the Defendant became visibly agitated – yelling insults, taunts, and threats at the FBI agents - including threatening to spit in the face of FBI Agent Michael Sheehan. *Id.* at ¶ 7. FBI agents warned that if the Defendant could not calm down and allow agents to complete the search, the Defendant would be detained. *Id.* at ¶ 7. The Defendant's aggression persisted, which made conducting the search safely and efficiently impossible. *Id.* FBI agents

handcuffed the Defendant and intended to briefly detain the Defendant in a law enforcement vehicle so as to complete the execution of the federal search warrant. *Id.* at 8. The Defendant could be heard gathering saliva in her mouth while being handcuffed. *Id.* While the Defendant was handcuffed and exiting the residence, the Defendant spat in an FBI Agent's face. *Id.* at 8. The Defendant was then placed under arrest for assaulting a federal agent while in the performance of his duties.

The Government's evidence at trial will show that the Defendant was then transported to the Deerfield Police Station for booking and subsequently transported to federal court. While under arrest and detained at the Deerfield Police Station, the Defendant's volatile, destructive, and disruptive behavior persisted. She screamed at and threatened law enforcement investigators, destroyed police department property, and made inculpatory statements about spitting on the FBI agent.

## I.  Motion in Limine to Admit Evidence regarding the Defendant's Actions/Statements Post-Arrest

The Government moves in limine to admit video and audio recordings captured by law enforcement that include the Defendant's post-arrest actions and statements. Specifically, the Government moves in limine to admit post-arrest FBI body-worn camera footage, Deerfield Police Department booking videos, and Hampden County Sherriff's Department transport videos.[2] The video and audio footage include the Defendant's admission that she intentionally spit on an FBI agent who was executing a search warrant. They also include additional threats and insults the Defendant made to law enforcement and depict the Defendant's highly volatile, destructive, and aggressive demeanor. Therefore, the portions of the video and audio recordings are admissible

---

[2] The video/audio were provided to defense counsel as part of automatic discovery. The Government will submit the video/audio to the Court, upon request. As the Government continues to prepare for trial, certain portions of these video/audio recordings will be designated as individual exhibits and provided to defense counsel and the Court.

because they (1) include the Defendant's admissions and (2) are highly probative of the Defendant's state-of-mind, intent, and motive.

*First*, the Defendant's own post-arrest statements are admissible against her. Under Federal Rule of Evidence 801(d)(2)(A), a statement that is offered against an opposing party that was made by that party is not hearsay. "When the out-of-court statement at issue was made by the defendant, it is typically classified as an admission and not hearsay and ordinarily may be admitted against him." *United States v. Vega Molina*, 407 F.3d 511, 519 (1st Cir. 2005); Fed. R. Evid. 801(d)(2). Accordingly, the Government is permitted to offer the Defendant's out-of-court statements against her at trial. *See* Fed. R. Evid. 801(d)(2)(A); s*ee also Old Chief v. United States*, 519 U.S. 172, 186 (1997) ("[A] defendant's admission is, of course, good evidence.")

*Second,* the Defendant's post-arrest statements and actions are relevant and their admission is not unfairly prejudicial. "Generally, all relevant evidence is admissible" at federal trials. *United States v. Flemmi*, 402 F.3d 79, 86 (1st Cir. 2005) (citing Fed. R. Evid. 402 ("Relevant evidence is admissible.")). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a) (emphasis added). The First Circuit has explained that this standard is broad, and evidence that provides background information, or which provides context to explain the Government's theory of the case, is relevant, admissible evidence. *Flemmi*, 402 F.3d at 87 (citing *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.")).

Evidence of a defendant's other "bad acts," which is governed by Fed. R.

Evid. 404(b), has "special relevance" that allows for its admission when "introduced 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *United States v. Sabean*, 885 F.3d 27, 36 (1st Cir. 2018) (quoting *United States v. Goyner*, 761 F.3d 157, 163 (1st Cir. 2014)). The First Circuit has recognized that "[s]uch evidence may be particularly helpful when an actor's state of mind is at issue 'and the only means of ascertaining that mental state is by drawing inferences from conduct.'" *Id*. (quoting *United States v. Huddleston*, 485 U.S. 681, 685 (1988)). In sum, "evidence of other criminal acts [is] admissible . . . when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; *or explains the circumstances thereof*." *United States v. Dworken*, 855 F.2d 12, 27 (1st Cir. 1988) (quotation marks omitted, emphasis in original).

Where other acts evidence is probative of intent and motive, the evidence is admissible so long as it is not unfairly prejudicial. *Huddleston*, 485 U.S. at 688 ("If offered for [] a proper purpose, the evidence is subject only to the general strictures limiting admissibility such as Rules 402 and 403."). "[E]vidence which tends to rebut a defendant's claim of innocent action is unlikely to be unduly prejudicial." *United States v. Mehanna*, 735 F.3d 32, 64 (1st Cir. 2013) (quotation marks omitted). Moreover, "'Rule 403 does not ensure that trials—even criminal trials—will be antiseptic affairs.'" *Goyner*, 761 F.3d at 164 (quoting *Mehanna*, 735 F.3d at 64). Rather, when other acts evidence is relevant for a proper purpose (such as intent and motive), the risk of unfair prejudice may be sufficiently mitigated by a trial court's limiting instructions — even where the evidence may well produce strong emotional reactions by the jury. *See, e.g., Sabean*, 885 F.3d at 36-37 (affirming admission of evidence of defendant's prior sexual abuse to prove motive and intent and finding trial court properly avoided unfair prejudice through a limiting instruction); *Goyner*, 761 F.3d at 164 (same).

The defendant's state of mind is directly relevant to her motive and intent to spit on a federal agent when he was performing his duties executing a federal search warrant at her home. The evidence provides crucial context that will allow the jury to assess whether the defendant had the intent to commit the charged crime. It is of no moment whether the other acts evidence provides circumstantial (rather than direct) evidence of a defendant's intent or motive. "Criminal defendants rarely shout their nefarious intentions from the rooftops." *Sabean*, 885 F.3d at 37. Because of this, the Government may—and often must—establish intent and motive through circumstantial evidence, including other acts evidence. *Id*. ("Circumstantial evidence can suffice to forge such a link, and this jury had the right to infer motive or absence of mistake based on common-sense inferences drawn from evidence of the attendant circumstances.").

Here, the Government seeks to introduce evidence concerning the defendant's statements and behavior in police custody immediately after the charged offense, for the permitted purpose of "complet[ing] the story of the crime on trial by proving its immediate context of happenings near in time and place." *Sabean*, 885 F.3d 27, 36. This evidence will explain the defendant's state of mind at the time and thereby give a window into her motive and intent on the morning of the crime. This evidence will allow the jury to see this crime in full context. Given the probative value of this evidence to establish the defendant's state-of-mind, motive and intent, it is properly admissible under Rule 404(b).

## II.   Motion in Limine to Admit Evidence regarding the Defendant's Roommate's Arrest and Charges and the Federal Search Warrant for her Home

The Government should be allowed to introduce evidence that explains why federal agents were at the Defendant's home the morning she was arrested. It is well established in the First Circuit that "relevancy is a very low threshold." *See United States v. Cruz Ramos,* 987 F. 3d 27, 42 (1st Cir. 2021). "Rule 401 defines relevancy broadly as evidence having any tendency to make the existence

of any fact that is of consequence more or less probable. [The First Circuit] has also held that to be relevant, the evidence need not definitively resolve a key issue in the case, it need only move the inquiry forward to some degree." *United States v. Rathbun,* 98 F.4th 40, 51 (1st Cir. 2024) (internal citations omitted).

"Evidence that pertains 'to a chain of events forming the context … and set-up of the crime, helping to complete the story of the crime on trial … [is admissible in appropriate cases] … where it possesses contextual significance.'" *United States v. Sabetta*, 373 F.3d 75, 83 (1st Cir. 2004) (quoting *United States v. Ladd*, 885 F.2d 954, 959 (1st Cir. 1989)). The First Circuit has "regularly sanctioned admission of such evidence in appropriate cases […] where it possessed contextual significance. Even grisly evidence – including evidence of homicides – has been admitted on this basis." *Ladd*, 885 F.2d at 959 (internal citations omitted); *e.g.¸ Rathbun,* 98 F.4th at 55; *United States v. Charles,* 456 F.3d 249, 256 (1st Cir. 2006); *United States v. Caparotta*, No. CR-06-58-B-W, 2008 U.S. Dist. LEXIS 43199, at *5 (D. Me. June 2, 2008).

The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. "Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.  We stress that it is only unfair prejudice which must be avoided . . . because [b]y design, all evidence is meant to be prejudicial." *United States v. DiRosa*, 761 F.3d 144, 153 (1st Cir. 2014) (internal quotations and citations omitted).

The Government should be allowed to introduce evidence that explains why federal agents were at the Defendant's home in the first place – to execute a federal search warrant following the arrest of the Defendant's roommate. The Defendant's roommate – Ryan "Reily" English – was arrested on January 27, 2025 after she traveled from Massachusetts to the United States Capitol and

was found to be possession of "Molotov Cocktails" and a knife. *United States v. Ryan English*, 1:25-cr-00134-RC (D. D. C.) (ECF No. 37). She was subsequently charged and pled guilty to one count of the Unlawful Receipt, Possession, and/or Transfer of a Firearm, in violation of 26 U.S.C. s. 5861(d) and one count of Carrying a Firearm, Dangerous Weapon, Explosive, or Incendiary Device on the Grounds of the U.S. Capitol, in violation of 40 U.S.C. s. 5104(e)(1)(A). *Id.* Following English's arrest, the United States Capitol Police applied for and obtained a federal search warrant to search English's home in South Deerfield, MA. The Defendant was English's roommate.

The government should be permitted to introduce evidence regarding the crimes for which the Defendant's roommate was arrested and that agents applied for and obtained a federal search warrant in the wake of her arrest. Additionally, the Government should be able to introduce evidence regarding the scope of the search warrant and what federal law enforcement agents were searching for – including weapons and incendiary devices and the tools and equipment used to create such devices. All of this information is necessary contextual evidence for the jury to understand the agents' actions. The jury will see body-camera footage showing approximately a dozen agents with tactical gear and firearms surround and enter the Defendant's home. The jury must be permitted to understand that federal agents were not targeting the Defendant but instead were authorized by a federal judge to search for evidence of her roommate's serious crimes. Without this contextual evidence, the jury will be misled to believe that federal law enforcement agents improperly targeted the Defendant and her home without justification. Additionally, without the context of English's specific crimes, the jury will be misled to believe that law enforcement's heavy presence, tactical gear, and firearms were above-and-beyond what was needed. Thus, the Court should admit this important contextual evidence.

**III.    Motion in Limine to Preclude Defense Counsel from Jury Nullification Arguments**

The Government moves in limine to bar the Defendant from inviting jury nullification through the questioning of witnesses, introduction of certain exhibits, in opening or closing statements to the jury, or otherwise.  Arguments that go to jury nullification, or any other invitation to the jury to consider the prosecution's alleged motives in bringing the instant charges, should be barred.

The Defendant should be precluded from presenting to the jury statements that improperly criticize the Government, suggest the Government was driven by improper motivation, or assert the Government has unfairly singled out the Defendant for prosecution. The Defendant likewise should be barred from inviting jury nullification by asserting he should not have been charged criminally or by referencing potential penalties he faces.

The Defendant cannot ask the jury to nullify the law. *United States v. Alston*, 112 F.3d 32, 36 (1st Cir. 1997).  In other words, it is improper for a defendant or his counsel to suggest in any way that the jury should acquit the defendant even if it finds the Government has met its burden of proof. *See, e.g., Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994).

Therefore, the Government respectfully moves this Court to preclude the Defendant from arguing in favor of, presenting evidence of, or otherwise pursuing lines of inquiry designed to invite jury nullification.  Although the Government is unable to anticipate every form of argument or evidence the Defendant might seek to introduce at trial, the Government notes at least the following examples of potential jury nullification.

**A.** The Defendant Should be Precluded from Making Claims of Selective or Vindictive Prosecution, or "Outrageous" Government Conduct, Should be Barred.

The law holds that claims of improper conduct on the part of the Government offer no

defense to the criminal charges and are not relevant to the merits of the charges. The Supreme Court has provided: "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense

defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Because claims of alleged government conduct are irrelevant to the merits of criminal cases, suggesting to the jury that alleged misconduct provides a basis for acquittal is an invitation for jury nullification. There are numerous ways the Defendant could attempt, either directly or indirectly, to improperly argue alleged government misconduct as a defense. For example, the Defendant might improperly suggest to the jury that the Government's investigation or prosecution was abusive and violated legal or ethical requirements. Because such allegations are irrelevant to the jury's decision and serve no purpose other than to distract the jury from legally relevant matters, they would only invite the jury to acquit the Defendant without regard to admissible evidence.

Moreover, to support a defense of selective or discriminatory prosecution, the First Circuit holds the defendant must first provide "objective evidence tending to show the existence of prosecutorial vindictiveness." *U.S. v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009). The standard is a rigorous one, and it poses a significant barrier to the litigation of insubstantial claims.

Because a selective prosecution claim is one based on "defects in the institution of the prosecution," it must be asserted before trial. Fed. R. Crim. P. 12(b)(1). Accordingly, to the extent the Defendant wishes to raise the issue, he must raise it with the Court before trial, not to the jury. *See, e.g.*, *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983) (noting that "a defendant who advances a claim of selective prosecution must do so in pretrial proceedings"). Therefore, if a defendant has claims of selective prosecution or outrageous government conduct, the only proper means of resolving them is to file pretrial motions making

such claims. Failure to assert a selective prosecution claim in pretrial motions constitutes waiver of the claim (*see* Fed. R. Crim. P. 12(f)), and accordingly the defense should be precluded from presenting it to the jury.

**B.** The Defendant Should be Precluded from Introducing Arguments Relating to the Government's Motivation for Prosecution.

Pursuant to Federal Rule of Evidence 403, the Court should bar any reference to the Government's alleged motivation in bringing the prosecution, even if – contrary to law – the Government's motivations were somehow relevant.

District courts have broad discretion to admit or exclude evidence under Federal Rule of Evidence 403, which provides, in part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The test of relevance is a flexible one, requiring only that the proffered evidence makes the existence of a fact more or less probable than it would be without the evidence. Upon establishing that the tendered evidence is relevant, a district court must weigh the probative value against unfair prejudice.

11

When probative value is substantially outweighed by unfair prejudice, the trial court can exercise its discretion to exclude the evidence.

Challenging the Government's motivations in front of the jury would violate Rule 403, as it would open the door to a full presentation of the Government's charging procedures and decisions, in order to demonstrate that the Government's conduct was consistent with the mandate to faithfully execute the laws.  Thus, the Defendant's charge and the Government's response would create a mini-trial that would waste time and confuse the issues that are properly before the jury. *See, e.g., United States v. Johnson,* 605 F.2d 1025, 1030 (7th Cir. 1979) (*en banc*) (defendant's claim that the indictment was a "political instrument," even if relevant, was properly excluded pursuant to Rule 403 because it was an "extraneous and collateral matter" unrelated to the particular transactions at issue); *cf. United States v. Young,* 470 U.S. 1, 13 (1985) ("the better remedy" is for the district court to "deal with the improper argument of the defense counsel promptly and thus blunt the need for the prosecutor to respond").

**C.** <u>The Defendant Should be Precluded from Referencing Potential Penalties Faced by the Defendant.</u>

Arguments or evidence concerning potential penalties faced by a defendant is improper because it is irrelevant to the jury's determination of guilt or innocence. *See, e.g.*, *Shannon v. United States,* 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.") (internal quotation and citation omitted).

Mention of the potential penalties faced by the Defendant would improperly invite the jury to consider the penal consequences of a conviction and, ultimately, nullification. *See, e.g.,* *Rogers v. United States*, 422 U.S. 35, 40 (1975) ("the jury ha[s] no sentencing function and

should reach its verdict without regard to what sentence might be imposed."); *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial").

The defense should be precluded from mentioning in any way the potential penalties the Defendant faces.  Evidence or argument related to the potential penal consequences the Defendant would face if convicted – whether they involve specific references to years in jail, or general arguments that "the defendant is on trial for his life," or "the defendant's freedom hangs on the outcome of the jury's decision," – are prejudicial and must be barred.

## CONCLUSION

For the reasons stated above, the Court should ALLOW the Government's Motions *in Limine* included within this Omnibus filing.

Date:  April 17, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  */s/ Thomas A. Barnico, Jr.*
Thomas A. Barnico, Jr. (BBO#696929)
Assistant United States Attorney
United States Attorney's Office
300 State Street, Suite 230
Springfield, MA 01105
413-785-0235
Thomas.Barnico@usdoj.gov


*/s/ Caroline Merck*
Caroline Merck (BBO#691919)
Assistant United States Attorney
United States Attorney's Office
300 State Street, Suite 230
Springfield, MA 01105
413-785-0235
Caroline.Merck@usdoj.gov

## **CERTIFICATE OF SERVICE**

 I, Thomas A. Barnico, Jr., hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic filing.


Date: April 17, 2026

               */s/ Thomas A. Barnico, Jr.*
               Thomas A. Barnico, Jr.
               Assistant United States Attorney