**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____

UNITED STATES OF AMERICA

    v.

JUDITH PEPE,
    *Defendant.*

_____

)
)
)
)
) Docket No. 3:25-CR-30007
)
)
)
)

---

**OPPOSITION TO GOVERNMENT'S OMNIBUS MOTION IN
LIMINE (DOC. 73)**

---

   **I.**    **Opposition to Government's Motion in Limine to Admit
Evidence regarding Defendant's Statements and Actions
Post-Arrest.**

    **A.**    **Facts relevant to the Government's motion.**

In automatic discovery, the Defendant, through counsel, received an audio-visual recording made at the Deerfield Police Department (Bates 012). In it, the Defendant asks to make a phonecall and to put on socks so her feet will not touch the floor, which she believes is dirty. She is moved off camera, presumably into a cell, and begins yelling hysterically. The Deerfield police video (Bates 012) does not contain admissions or inculpatory statements or discussions of the subject offense.

The Defendant also received, through counsel, videos of the Hampden County Sheriff's Department showing the Defendant traveling in a van and arriving at what appears to be the Deerfield Police Department (Bates 109, 110, and 111). In the video, the Defendant comments in a derogatory way on the physical and moral attributes of the members of the Hampden County Sheriff's Department. For example, the Defendant calls an employee of the Hamden County Sheriff's Office a "midget" and asks if he dates women taller than he is. There is no discussion of the crime charged, and the Defendant does not make any admissions during these conversations.

On April 23, 2026, the Government provided a longer audio-visual recording of the Defendant in the Deerfield Police Department. Two calls between the Defendant and her mother are captured. The Defendant first asks her mother to call a lawyer and then tells her mother that she spat at a federal police officer. She explains that the officer had tackled her and was choking her. The Defendant was not warned that she was being audio recorded before making the calls.[1]

---

[1] The fact of *video* surveillance was revealed to the Defendant when she expressed concern about the safety of her belongings. The officer assisting her reassured her that cameras were "recording" their actions, as a result of which nothing could be stolen.

**B.** **Post-arrest recorded statements produced as automatic discovery are not admissible as direct evidence.**

With respect to the "post-arrest FBI body-worn camera footage" (Doc. 73 at 3), the Defendant refers to and incorporates her Motion to Exclude Portions of Body Camera Footage (Doc. 74).

With respect to "Deerfield Police Department Booking videos" (*id.*), the Defendant objects on the ground that the statements and interactions contained therein do not tend to prove or disprove the events that occurred earlier that day.[2] The Defendant comments in a derogatory way on the physical and moral attributes of the law enforcement personnel then present, none of which is directly relevant to the charges against the Defendant.

**C.** **Post-arrest recorded statements produced as automatic discovery are not admissible under FRE 404(b).**

The government also argues that the Defendant's demeanor post-arrest is "highly probative of the Defendant's state of mind, intent, and motive" an hour earlier, when the alleged spitting occurred. The government does not identify a motive, intent, or relevant state of

---

[2] Although denominated "booking videos" in the Government's motion, the videos do not include any booking procedures. They are recordings of the Defendant waiting on a bench, speaking with officers, and calling her mother.

mind that the post-arrest conduct proves. Nor is it obvious how the intent to spit on one person is proven by calling a different person "midget" or "fat" an hour later. The government asserts (correctly) that evidence of a separate crime is admissible to put the charged crime in "full context." But the government does not explain what larger criminal context would be illuminating by introducing the Defendant's tirade regarding Mr. Ramos's height or her query about his dating preferences.

The Defendant said mean things to people after she was arrested. The government has not identified any motive, intent, or relevant state of mind that the post-arrest insults would tend to prove. They are not admissible under Rule 404(b).

Whatever marginal relevancy the comments might have is substantially outweighed by the danger of unfair prejudice that would arise from introducing them. The Defendant's insults are mean-spirited and personal, and for that reason they risk prejudicing the jury against her. Moreover, because she denigrates people for being "fat" and "short," there is a danger that anyone on the jury who is below average height or above average weight would be offended by her comments, leading to uinfair biased against her. (The Defendant is tall

and thin.) The danger of arousing the jury's prejudice against her by introducing her comments is substantial and should be avoided.

> ### D. Late-produced statements of the Defendant that were surreptitiously recorded by the Deerfield Police Department are not admissible for any purpose.

>> 1. The late-disclosed statements should be excluded pursuant to Fed. R. Crim. P. 16(d)(2).

Pursuant to Local Rule 116.1(c)(1)(A), the government is required to provide "all the information to which the defendant is entitled under Fed. R. Crim. P. 16(a)(1) within 28 days from arraignment, absent a contrary scheduling order issued by the Court." In this case, the court issued a scheduling order requiring completion of automatic discovery on or before May 22, 2025. (Doc. 22 ¶ 1.) The recording of the Defendant's alleged confession was produced almost a year later, on April 23, 2026.

If the government fails to comply with the Rule 116.1 scheduling order, the court may "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

In this case, trial is scheduled for June 1, 2026, and disclosure was made for the first time on April 23, 2026. Exclusion is an appropriate remedy because the Defendant was "deprived of the opportunity to design an intelligent litigation or plea strategy that responded to the alleged statement." *United States v. Alvarez*, 987 F.2d 77, 85 (1st Cir. 1993).

> 2.   The Defendant's unlawfully recorded telephone conversations with her mother should be excluded because their admission would violate the Defendant's rights to counsel, due process, and a fair trial.

In the alternative, the Defendant's conversations with her mother should be excluded because they were recorded in violation of the Massachusetts wiretap law and, as a result, defense counsel is unable to use the recordings during examination of witnesses or argument without risking criminal prosecution. If the Government is permitted to introduce recordings about which defense counsel can make no inquiry or argument, the Defendant will be deprived of the right to counsel and a fair trial.

The Massachusetts wiretap law criminalizes both surreptitious recording and the use or disclosure of such recording thereafter:

> [A]ny person who willfully commits an interception, attempts to commit an interception, or procures any other

person to commit an interception or to attempt to commit an interception of any wire or oral communication shall be fined not more than ten thousand dollars, or imprisoned in the state prison for not more than five years, or imprisoned in a jail or house of correction for not more than two and one half years, or both so fined and given one such imprisonment.

G.L. c. 272, § 99(C)(1).

[A]ny person who (a) willfully discloses or attempts to disclose to any person the contents of any wire or oral communication, knowing that the information was obtained through interception; or (b) willfully uses or attempts to use the contents of any wire or oral communication, knowing that the information was obtained through interception, shall be guilty of a misdemeanor punishable by imprisonment in a jail or a house of correction for not more than two years or by a fine of not more than five thousand dollars or both.

G.L. c. 272, § 99(C)(3)(b). The Defendant was not notified that she was being audio recording while waiting in the police station and speaking with her mother. The substantive conversation that she had with her mother was nonetheless recorded by police, who were not parties to the call and had not obtained a warrant. *See, e.g., Commonwealth v. Morris*, 492 Mass. 498, 517 (2023) (police department's undisclosed audio recording violated wiretap statute and required suppression because it "reveal[ed] the defendants' thoughts or knowledge about some fact or subject"), distinguishing *Commonwealth v. Gordon*, 422 Mass. 816 (1996) (declining to

7

suppress surreptitious recording of administrative booking procedure where only defendant's "bearing and manner of speaking" were exhibited).

Because of the wiretap violation, admission into evidence of the recorded conversations would deprive the Defendant of the right to counsel and a fair trial. Only the government and not defense counsel can "use" the contents of the recording without committing a crime. *See* M.G.L. c. 272 § 99(D) (no immunity from prosecution for members of defense bar). *Compare* M.G.L. c. 272, § 99 (D)(1)(c) (exempting federal prosecutors from prosecution). Defense counsel cannot refer to the contents of the recording, either in cross examination, direct examination, or opening or closing argument.

Admitting the contents for use solely by the government, while defense counsel must stand mute on pain of criminal prosecution, is constitutionally impermissible.[3]

---

[3] Massachusetts avoids this constitutional difficulty by mandating suppression of "any information concerning the identity of the parties to [the wire or oral] communication or the existence, contents, substance, purport, or meaning of [the intercepted] communication" in a criminal proceeding. *Commonwealth v. Du*, 495 Mass. 103, 107 (2024) (citing G.L. c. 99(P).) Statutory suppression avoids the necessity of misdemeanor "use" in court because suppression is specifically tailored to ensure that "no evidence of the existence of the interception come[s] to the attention of the fact finder." *Commonwealth v. Jarabek*, 384 Mass. 293, 299 (1981). That is, to the extent that introduction of evidence related to the recorded conversation would require either party to "use" the recording at trial, the evidence is suppressed.

**II.    Partial opposition to Government's Motion in Limine to Admit Evidence regarding the Defendant's Roommate's Arrest and Charges and Federal Search Warrant for her Home.**

The fact of the search warrant and its scope is admissible at trial. However, the government seeks to go further. It asks to introduce the nature of the charges against the Defendant's roommate to prevent the jury from being "misled to believe that law enforcement's heavy presence, tactical gear, and firearms were above-and-beyond what was needed." (Doc. 73 at 8.) It is not clear why the jury should be prevented from being misled on this point, which is entirely irrelevant and has no bearing on whether the Defendant spat on a federal officer who was lawfully present executing a search warrant in her home.

By contrast, admitting the nature of the Defendant's roommate's crimes that resulted in the issuance of the search warrant is substantially more prejudicial than probative. There is a danger of guilt by association – that the jury will believe that because the roommate possessed weapons the Defendant condones or approves of violence.

The Defendant's roommate's crimes are irrelevant, and their admission into evidence would be substantially more prejudicial than probative.

9

### III. Partial opposition to Government's Motion in Limine to Preclude Defense Counsel from Jury Nullification Arguments.

The Defendant does not oppose the government motion insofar as it would prohibit the Defendant's attorney from proposing jury nullification or disclosing specific penalties to which a conviction would expose her.

However, the Defendant opposes the motion insofar as the government asks that her attorney "be precluded from presenting to the jury statements that improperly criticize the Government" or "asserting he [sic] should not have been charged criminally." (Doc. 73 at 9.)  It is not clear what "improper" criticism would be, but defense counsel must argue that the Government has brought charges against an innocent person. It is widely understood that accusing innocent people of crimes is bad and should not happen. Therefore, the act of criminal defense is inherently critical of the government and encompasses the implication that the charges should not have been brought. Precluding the Defendant from implying, asserting, and arguing to this effect would deny her a defense altogether.

The government also requests that the Defendant should be precluded from arguing that the conduct of the government toward her

10

was "outrageous." (Doc. 73 at 9.) This request should be denied. The government's conduct in detaining her unlawfully and then assaulting her gives rise to the defense of self-defense. *See, e.g., United States v. Frederickson*, 988 F.3d 76 (1st Cir. 2021). The Defendant asserts (in the very statement to her mother that the Government seeks to admit) that she spat in the direction of her attacker because she was being detained, tackled and choked. (*See supra*.) There is likely to be a factual basis at trial for the argument that the police assaulted her. The Defendant cannot constitutionally be prohibited from arguing to the jury that her assault by federal agents was so outrageous and extreme as to trigger her right to use force against them in self-defense. Such a prohibition would deny her the right to put on a defense in violation of her right to due process and a fair trial.

<div style="margin-left: 40%;">

Respectfully Submitted,
JUDITH PEPE,
By Counsel,
*/s/ Dana Goldblatt*
Massachusetts BBO# 601022
The Law Office of Dana Goldblatt
PO Box 85
Northampton, MA 01060
413-570-4136
dana@danagoldblattlaw.com

</div>

11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| | ) |
| UNITED STATES OF AMERICA, | ) |
| *Appellee,* | ) |
| | ) |
| v. | ) Docket No. 3:25-CR-30007 |
| | ) |
| JUDITH PEPE, | ) |
| *Defendant-Appellant.* | ) |
| _____ | ) |

---

## CERTIFICATE OF SERVICE

---

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) on April 24, 2026.

Respectfully Submitted,
JUDITH PEPE,
By Counsel,
*/s/ Dana Goldblatt*
Massachusetts BBO# 601022
The Law Office of Dana Goldblatt
150 Main Street, Ste 28
Northampton, MA 01060
413-570-4136
dana@danagoldblattlaw.com

1